**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,**

v.

**J. D. MITCHELL, Appellee.**

**No. 17057.**

United States Court of Appeals
Eighth Circuit.

Jan. 22, 1963.

See, also, 192 F.Supp. 819.

---

P. H. Hardin, of Hardin, Barton & Hardin, Fort Smith, Ark., for appellant.

Thomas Harper, Fort Smith, Ark., J. W. Durden, of Harper, Harper, Young & Durden, Fort Smith, Ark., on the brief, for appellee.

Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

REGISTER, District Judge.

This is an appeal from a judgment in favor of appellee J. D. Mitchell and against the appellant insurance company in a suit based upon appellant's alleged negligence and bad faith in failing and refusing to settle an action for wrongful death brought against the insured, J. D. Mitchell by Mrs. William A. Stanton, on behalf of herself and three minor children, and as administratrix of the estate of her deceased husband, which judgment required said appellant to satisfy in full the judgment entered in said original action for an amount in excess of the limits of the policy.

Appellant, Southern Farm Bureau Casualty Insurance Company, on July 14, 1959, issued to the appellee, J. D. Mitchell, a policy of automobile liability insurance, No. A–268,195, insuring the appellee against loss up to $10,000 for bodily injury and up to $5,000 for property damages which the appellee might become liable to pay by reason of the operation of his automobile. Said policy of insurance was in full force and effect on December 30, 1959. On that date appellee was involved in an intersection collision with William A. Stanton, who subsequently died as a result of injuries sustained in said collision. Colonel Stanton's widow, on behalf of herself, three minor children, and as the Administratrix of his estate, made a claim against the appellee and his insurance carrier (appellant here) for damages sustained as a result of the collision. Such claim was denied, and in January, 1960, suit was commenced in Sebastian County Circuit Court, Fort Smith District, Arkansas, by the Administratrix, seeking to recover damages on behalf of the estate, herself, and her three minor children.

Said action proceeded to trial and on June 1, 1960, the jury rendered a verdict in the amount of $37,500 in favor of the Administratrix and against the appellee, J. D. Mitchell. Judgment in accordance with the jury verdict was entered by the Sebastian County Circuit Court. Subsequently, the appellant here paid the sum of $11,500 plus interest ($10,000, the policy limit, for personal injuries, and $1,500 property damage), to be credited on said judgment. The sum of $26,000, plus interest, remains unpaid.

On February 13, 1961, the appellee, J. D. Mitchell, filed an action for declaratory judgment in Sebastian County Chancery Court against appellant Southern Farm Bureau Casualty Insurance Company and Mary Imelda Stanton, Administratrix of the Estate of William A. Stanton, Deceased, (the plaintiff in the original action) seeking a judgment requiring appellant to satisfy the full amount of the judgment theretofore rendered in Circuit Court. This action was timely removed to the federal district court and thereafter (but prior to trial) the Court on its own motion realigned said Mary Imelda Stanton, Administratrix, as a party plaintiff, and subsequently (also prior to trial) dismissed her, without prejudice. This action proceeded to trial and on January 16, 1962, pursuant to jury verdict, judgment was entered directing the appellant, Southern Farm Bureau Casualty Insurance Com-

pany, "to satisfy in full the said judgment entered June 1, 1960, against J. D. Mitchell by the said Sebastian Circuit Court in Civil Action No. 2717, Fort Smith District".

Following a denial of its motion for judgment notwithstanding verdict, the appellant timely appealed to this Court from the order and judgment of the district court entered on January 16, 1962.

Appellee's action is predicated upon appellant's alleged failure to exercise good faith and the requisite degree of care, in refusing to settle and compromise within the policy limits the claims then pending against appellee.

Many of the facts alleged in appellee's complaint are admitted in appellant's answer. It is admitted that the policy of insurance involved was in full force and effect on the date of the accident; that the accident described occurred; that offers to settle and compromise the claim against appellee within the policy limits were made by claimant; that appellee made demands upon appellant to settle within the limits of the policy; that appellant refused to do so; that as a result of the trial in Sebastian Circuit Court a judgment was rendered against appellee in the sum of $37,500; that appellee demanded that appellant pay the full amount of the judgment rendered in Circuit Court ($37,500); that appellant paid the amount of $11,500, plus interest, to be credited on said judgment; and that there remains to be paid on said judgment the sum of $26,000. The appellant further admits that appellee Mitchell is indebted to the Administratrix, Mary Imelda Stanton, in the amount of $26,-000.

In the policy of insurance issued by the appellant to appellee, appellant agreed:

> "To defend any suit against the insured for such damages even if groundless, false, or fraudulent; but the company may make such settlement of any claim or suit as it deems expedient."

Pursuant to such terms, appellant assumed the duty of defendant appellee (defendant in said action) and of controlling the investigation, negotiation and settlement of the action, which arose out of the ownership, maintenance and use of the insured automobile.

Appellee contended that, in refusing to settle the suit in state court within the policy limits, appellant acted in bad faith and negligently and solely for its own interest and in complete disregard of appellee's rights and interest—which contentions were specifically denied by appellant.

Appellant assigns as error the action of the trial court in denying and overruling appellant's motions for directed verdict and for judgment notwithstanding the verdict, on the following grounds:

1. "The evidence was insufficient to warrant submission of the case to the jury", and

2. "Until appellee has paid the excess judgment he has no accrued cause of action".

■■■■ This case having come to the federal district court by reason of diversity of citizenship and the requisite amount in controversy, said court was required to determine the same in accordance with the laws of Arkansas. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

"* * * in some jurisdictions liability of an insurer for refusal to settle within the policy limits is based on bad faith, and * * * in some other jurisdictions liability is based upon negligence." Milbank Mutual Insurance Company v. Schmidt (8 Cir.), 304 F.2d 640, 644. Also see: Frank B. Connet Lumber Co. v. New Amsterdam Casualty Company (8 Cir.), 236 F.2d 117, 125. Under the law of Arkansas (which is here controlling), in a situation such as here exists, the insurance company owes its insured "the duty to act in good faith, *and also* the duty to act without negligence". Southern Farm Bureau Casualty Insurance Co. v. Parker, 232 Ark. 841, 341 S.W.2d 36, 40. Arkansas law is now established that where an insurer, either through negligence *or* bad faith, fails to

settle a claim against its insured within the limits of the policy, when it is possible to do so, the insurer is liable to the insured for any judgment recovered against him in excess of such policy limits, and that whether the insurer was negligent or acted in bad faith in such refusal is a question of fact for jury determination. Parker, supra, and Southern Farm Bureau Casualty Insurance Co. v. Hardin, Ark., 351 S.W.2d 153.

In harmony with such law, the trial court herein instructed the jury, as to the question to be decided by it, in the following language:

"Was the failure of the defendant insurance company to settle the lawsuit in the Sebastian County Circuit Court and claim of the Administratrix of the Estate of William A. Stanton, deceased, against J. D. Mitchell due to bad faith or negligence on the part of said insurance company?"

In considering whether the verdict is sustained by substantial evidence, we have carefully examined and analyzed the entire record. "In considering the question here the evidence must be viewed in a light most favorable to the plaintiff. The jury having found the issues in his favor, we must accept as true all facts which the evidence reasonably tended to prove and plaintiff is entitled to all favorable inferences which may reasonably be drawn from the evidence and circumstances proven." Railway Express Agency v. Mackay (8 Cir.), 181 F.2d 257, 259, 19 A.L.R.2d 1248; Carter Carburetor Corp. v. Riley (8 Cir.), 186 F.2d 148, 150; Black v. United States of America (8 Cir.), 309 F.2d 331; and Kelly v. Layton (8 Cir.), 309 F.2d 611.

A review of some of the facts pertaining to the accident and the actions taken by the respective parties herein subsequent thereto are essential to an understanding of the contentions of the parties.

At approximately 7:50 A.M., on December 30, 1959, appellee Mitchell was driving his Ford station wagon east on South Boston Street in Fort Smith, Arkansas, and at the intersection of that street with South 32nd Street in said City, his vehicle collided with a Volkswagen automobile owned and then being operated by Col. William A. Stanton, who was driving north on South 32nd Street. Mitchell and Stanton were residents of said city. Stanton was alone. Mitchell had one passenger, Charles Nichols. The right front fender of the Mitchell vehicle struck the left door area of the Volkswagen, resulting in the caving in of the Volkswagen's left door at the location of the driver's seat. Immediately after the impact, the Mitchell vehicle whirled around, made a complete turn, turned over, and was facing west when it came to rest off of the street and in the corner of the front yard of the residence of Mr. George Perrin. The Volkswagen traveled east on South Boston Street for a distance of approximately 150 feet and came to rest near a utility pole on the south side of said street. Mr. Perrin, who was just getting up, heard the collision, looked out the window, saw the overturned car in his front yard, hurriedly finished dressing and ran outside to help. After calling to the occupants to shut off the engine to prevent the car from catching fire, Mr. Perrin called the ambulance for the occupant of the Stanton vehicle. He then went to the Volkswagen, attempted unsuccessfully to open the door on the driver's side, went to the opposite door and, realizing that Stanton was seriously injured, returned to his home and got some blankets with which he covered Col. Stanton. He remained with Col. Stanton until the ambulance arrived, and assisted the attendants. He then took Mrs. Stanton to the hospital, went into the emergency room with Col. Stanton, and assisted with caring for him until medical attention was available. He returned home about 11:00 A.M., and noticed the debris resulting from the collision—debris which he stated was in the northeast quadrant of the intersection and which seemed to be concentrated "right at the corner of my lot there",

and at the edge of the street. Mr. Perrin was among the first persons to arrive at the scene of the collision.

At the time of the collision Mr. James E. Harris was a carpenter, residing in Fort Smith, who had just arrived for work on a new house which was being constructed north of the Perrin residence. He heard the collision and ran out to where he could see what had happened. He saw the station wagon "over in the yard, over in the corner", at the northeast corner of the intersection and the Volkswagen as it was slowly rolling at four or five miles an hour, until it stopped at the location stated. He went to the Volkswagen and found Colonel Stanton in it. He saw the condition of the automobile and its occupant. He was unable to open the front door of the automobile and remained until the ambulance left with Colonel Stanton. He then went to the intersection where he saw the debris which was in the northeast quarter of the intersection. Mr. Harris was the first person to arrive at the scene of the accident, other than the persons involved therein.

Mr. Bill Satterfield, a resident of Fort Smith, was, at the time of the accident, employed by the Twin City Ambulance Company. He received a call at about 7:50 A.M. on that day to go to the scene of the accident. He drove the ambulance and was accompanied by an attendant. When he arrived he saw the overturned station wagon in the Perrin front yard, saw debris in the northeast corner of the intersection, went to the Volkswagen, from which he and the attendant removed Col. Stanton, placed him in the ambulance and took him to the hospital.

Mr. A. G. Campbell, an automobile mechanic and wrecker driver living in Fort Smith and then working for the Ross Motor Company, was called to the scene of the accident on December 30, 1959, to bring the Volkswagen to the shop. He received the call after 10:00 A.M., went to the scene of the accident, noticed debris in the northeast corner of the intersection, saw the condition of the Volkswagen and towed it to the shop.

Colonel Stanton died later that evening from the injuries he received in this collision.

After the accident Mitchell went to appellant's office in Fort Smith, reported the accident, and later that same day was interviewed by Mr. Raymond Sorrows, an adjuster for the company. At that time Mitchell made a full disclosure to Mr. Sorrows and told him all that he knew about the accident. Mr. Sorrows took the statement down in longhand and Mitchell read the written statement. As a result of the accident Mitchell was charged with negligent homicide. Pursuant to recommendation of Mr. Sorrows, Mitchell employed Mr. Garner (local attorney and representative of the appellant insurance company) to represent him in that case. A short time thereafter the action for damages was filed.

Under date of February 4, 1960, appellant wrote a letter to appellee calling attention to the limits of the policy and informing him in part as follows:

"This company has retained the law firm of Hardin, Barton, Hardin and Garner, who we believe to be capable and qualified to represent you and this company in the defense of this suit.

"As the trial of this matter may result in judgment in an amount in excess of your policy, and the company will not pay any greater than the limits indicated above, should judgment be obtained against you in excess of these limits, this letter is to advise you of your right and privilege to retain an attorney of your own choice to represent you personally in the defense of this suit. * * " Mitchell did not reply to this letter and did not engage any other counsel. He later testified he was financially unable to do so. Appellant's Claim Manager for the State of Arkansas was Mr. Gerald Meacham. He had the complete and final authority to settle. He was notified of the accident by Raymond Sorrows, and at such time received general information concerning the same—thereupon and on December 31st he established a reserve as to this claim in the sum of $10,000 bodily injury and $1,000 property

damage. Reserves on claims were established pursuant to the requirements of the State Insurance Commissioner and the company's policy. Within a few days thereafter Meacham authorized Sorrows to offer Mrs. Stanton $7,500 for final settlement, which offer was transmitted to Mrs. Stanton prior to the time she employed counsel. This offer was rejected. After Mrs. Stanton's suit was filed, and following the investigation by Sorrows and Garner, (at which time he had been informed that the special damages exceeded $3,000, that Colonel Stanton was about 38 years of age, that he left a widow and three young children, that he had a substantial income and was a person of high standing in the community) Meacham authorized such offer to be increased to $8,000—which was the maximum amount authorized. This offer was declined. On April 25th Meacham knew, by virtue of a letter from counsel for Mrs. Stanton, that the case could be settled for $10,000—and later, prior to trial, and during the trial, knew that Mrs. Stanton offered to settle for $9,500, but he refused to increase the offer above $8,000.

The trial in the Sebastian Circuit Court began on May 31, 1960. On March 10, 1960, a discovery deposition of Mitchell was taken by counsel for Mrs. Stanton, at which Mr. Garner, as counsel for appellant and appellee, was present. Some of the questions asked of Mitchell and answers thereto given by him at said time and place appear as follows:

Q. "Now, in what direction were you looking as you approached the intersection?" A. "Looking east."

Q. "As you approach (sic) the intersection of South Boston and South 32nd did you look to your left?" A. "No, I don't think so."

Q. "Did you look to your right?" A. "The sun was in my eyes and I don't recall."

Q. "You don't recall whether you were looking to the right or not?" A. "No, I don't."

Q. "When did you first see the Stanton vehicle?" A. "At the instance of the impact."

Q. "Just as you hit him?" A. "Just as we hit."

Q. "Did you use your brakes at any time before the impact?" A. "No, I did not."

Q. "Did you swerve your car to the left?" A. "I remember swerving to the left; yes."

Q. "Do you know why you didn't see the other car before the impact?" A. "No, sir, I can't answer that."

Q. "What part of your car hit what part of the Stanton vehicle?" A. "My right hand fender hit his left hand door."

Q. "Now, where was the front end of the Volkswagen at the time the two cars came together?" A. "That I couldn't say either."

Q. "Do you know whether it was over the center line of South Boston Street, or not?" A. "No, I do not."

Q. "Approximately where in the intersection was the glass that you noticed?" A. "Around the center of the intersection."

Mitchell, in such deposition, also testified in effect that, after the collision, he went to the Volkswagen, saw the damage to that automobile, noticed Colonel Stanton's condition and tried unsuccessfully to pull the door open.

Other questions and answers appearing in the deposition follow:

Q. "What did you tell the investigating officer, Mr. Sanders, about how the collision occurred?" A. "I just told him that we were driving —that I was driving east on Boston and the car appeared in front of me and that's the only thing I remembered."

Q. "Did you see Mr. Stanton at all before the collision?" A. "No, I did not."

Q. "Was there anything at all to indicate to you that he was traveling at an excessive rate of speed?" A. "That I could not judge."

Q. "You don't know which car entered the intersection first?" A. "From what I saw, no, I couldn't say."

On March 10th the deposition of Charles Nichols was also taken, and his testimony was substantially the same as that of Mitchell. Nichols also testified that he did not see the Stanton car at all before the impact.

After the taking of these depositions, Mitchell had only one other conference with Garner prior to trial in the Circuit Court, and at that time he and Garner went to the scene of the accident.

No mention was ever made by Garner or by anyone else to Mitchell about efforts being made to settle the case. The only information Mitchell received that the case could be settled within the policy limits came from Mitchell's employer, Mr. Gerald Edwards. Edwards was also being sued by Mrs. Stanton, as co-defendant with Mitchell; this claim was settled for $500 and the case dismissed as to him. After receiving this information from Edwards, Mitchell mailed a letter to Meacham on April 28th. In this letter Mitchell stated in part as follows: "I have now been informed that this lawsuit can be settled, in full, within the policy limitations as outlined in your letter of February 4, 1960. Due to the extreme hazards that you (sic) company might place my personal finances, I caution you that this case should be settled promptly, and for the demands at present, which are within the policy limitations or it will be my contention that your company is not dealing in good faith and placing me in jeopardy unnecessarily, and that such action on your part will constitute a violation of our contractoral agreement which will cause your company to be liable for any judgment in excess of the policy limitations which might be obtained, since you are not in good faith attempting to dispose of this matter I demand that your company protect and pay and to save me harmless from any judgment rendered in excess of the policy limitations. All of the facts in this accident are apparent. There is no unknown or undisclosed information. The element of damage on total negligence would far exceed my policy; on the comparative negligence it is conceivable that a jury would conceive me to be liable for an amount in excess of the $10,000.00 which is the present demand for full settlement of this case. This letter is not to be construed as an admission of liability on my part, neither is it to be construed to be a failure on my part to cooperate with your company, for I stand ready to comply with any reasonable request, and make myself available to you for immediate compliance with your direction."

On May 25th (just a few days prior to trial), Mitchell mailed a letter to Garner, informing him of the April 28th letter, of his information that the claims could still be settled within the policy limits, and stating, " * * * and you are again requested to make such settlement for my protection, since otherwise I am exposed to a judgment far in excess of the above policy limits should this case go to trial, and it might result in a judgment considerably greater.

"In this connection and to facilitate settlement, you are hereby authorized and directed to dismiss any counterclaim, or cross-complaint, which you have filed on my behalf against the Stanton estate." Mitchell had previously authorized Garner to file a counterclaim for property damage to his automobile and for minor medical expenses. Both of said letters were received by appellant.

At the time Mitchell talked to Mr. Sorrows on the day of the accident, Mitchell reported substantially the same facts as quoted from the deposition. Mitchell, who was called as a witness in the trial in Sebastian Circuit Court, therein testified to substantially the same facts.

It is uncontradicted that he made a full disclosure of all facts relative to the

accident, within his knowledge, to representatives of appellant and withheld nothing from them.

That the appellant was, under the facts here existing, required by law to make a comprehensive and thorough investigation of the facts relating to liability, and to the extent of the probable damages, is conceded, and was well known to appellant. In Hardin, supra (in which appellant was one of the parties), the Supreme Court of Arkansas said, at 351 S.W.2d p. 156:

"Whether the insurance company properly investigated the case was a question of fact and there is some evidence to the effect that a proper investigation was not made to determine the full extent of Calhoun's injuries."

This Court, in Maryland Casualty Co. v. Elmira Coal Co. (8 Cir.), 69 F.2d 616, at p. 618, used the following language:

"If, upon a fair investigation of the facts, it (the insurance company) in good faith decided to contest rather than settle the claims, it had a right so to do. But, in view of the relation created by its contract through which the rights to negotiate for compromise or settlement were transferred from the insured to the insurer, there arose an implied duty on the part of the insurance company to exercise these rights honestly and intelligently. To intelligently exercise them, it was necessary that it investigate the facts and the probable extent of the liability."

In American Mutual Liability Ins. Co. of Boston, Mass. v. Cooper (5 Cir.), 61 F.2d 446, 448 (cited in Maryland Casualty Co., supra), the Court referred to the duty of the insurance company to act honestly and in good faith toward the insured, and commented upon the failure of the insurance company to interview witnesses as being one factor for the jury's consideration in deciding whether such duty was fulfilled.

In Larson v. Anchor Casualty Company, 249 Minn. 339, 82 N.W.2d 376, the Supreme Court of Minnesota, in discussing the duty owed by a liability insurer to an insured with respect to good faith and fair dealing in handling negotiations for settlement under such a policy as here exists, stated (p. 383):

"* * * we have kept in mind the rule, and given due recognition to it, that it is the duty of the insurance company to exercise good faith toward the insured, both in the investigation under a liability policy and in the defense of the lawsuit and in the payment of its obligations under the insurance contract."

The trial court in the instant case instructed the jury (in harmony with the pronouncement of Hardin, supra) that it might consider along with all the other evidence in the case whether the defendant therein (appellant) negligently failed to properly investigate the circumstances and facts to ascertain for itself all the available evidence on the issue of liability.

The undisputed evidence discloses that there were no stop signs on either street at the intersection where this accident occurred. The trial court instructed the jury that, in their deliberations, they were "entitled to consider that a driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway"; and "that when two vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right"—instructions to which no exception was taken. It should be noted that the Mitchell vehicle was to the left of Stanton's, and it is apparent that which vehicle entered the intersection first depended upon the relative speed thereof. The importance of securing all available evidence concerning the exact location of the debris resulting from the impact of the two vehicles is obvious.

The jury in this case might very well have been of the opinion that, in order to fulfill its duty to the insured and to

be fully and intelligently apprised as to the probability of liability, and the extent thereof of Mitchell to Colonel Stanton's survivors and estate, it was necessary that a representative of the insurance company interview the witnesses Perrin, Harris, Campbell and Satterfield, each of whom possessed personal knowledge of material facts which related to several aspects of the case. The testimony as to whether such interviews occurred is in irreconcilable conflict. Each of these four persons testified in this case that no representative of the appellant (adjuster, investigator or attorney—including Mr. Garner) had talked with him prior to trial in Circuit Court. Garner, who was actively in charge of such investigation for appellant and, as attorney for appellant, had control of the litigation, disputed this testimony, and testified that he had talked with Perrin on one or more occasions, had talked with both of the persons who were on the ambulance that took Colonel Stanton to the hospital, was positive that he had talked with Harris, and also with Satterfield, and that all of such conversations took place prior to the trial in Circuit Court. Garner testified he thought he talked with Harris when Mitchell and he went to the accident intersection a few days after the accident. Mitchell testified that, on that occasion, to the best of his recollection they did not talk with any people who lived in the neighborhood and that he did not know Harris. All of these four persons had continued to reside in Fort Smith from December 30, 1959, to the time of trial in Circuit Court. As the court, in effect, properly instructed the jury, the credibility of the witnesses and the weight to be given their testimony was within their sound discretion.

It is undisputed that, in the preparation for trial in Sebastian Circuit Court, the only written statements secured by appellant were from Mitchell and Nichols. Appellant also secured a copy of the police report. No discovery depositions were taken. At that trial the only witness called for the defense was Mitchell himself. During that trial Garner stipulated that the special damages, consisting of actual monetary expense for funeral and medical attention, and repairs to the Stanton automobile, exceeded $3,000.00, and that a Mr. Jernigan, "the actuary", if called, would testify that the loss of contributions by Stanton to his widow and survivors had a present value at the time of trial of $119,178.00. Such stipulated sums did not include any amount for pain and suffering. Garner testified in the present case to the effect that, long prior to the trial in Circuit Court, he was in possession of every material fact developed at that trial as to liability. This included the deposition testimony which disclosed that Mitchell was not keeping a proper lookout as he approached the intersection, as he did not see Colonel Stanton's vehicle until the instant of impact, although the intersection was on level ground and visibility was good in all directions for about 150 feet. Garner testified herein that he knew that Mitchell's failure to keep a proper lookout was in and of itself evidence of negligence on his part. Garner then had knowledge of the age of Colonel Stanton, and of his surviving wife and three small children, and of his approximate income at the time of his death. (Colonel Stanton was a flying officer in the Air Force, on active duty, at the time of the accident and his death.) Garner testified that he had known Colonel Stanton since arriving in Fort Smith in 1952, and knew of his character and reputation in the community. During the trial of the instant case Garner also testified that the jury's verdict in the Circuit Court in favor of the plaintiff therein was $37,500.00, that such verdict was supported by the evidence, and that he did not appeal on behalf of the defendant. He also testified herein that he knew of the comparative negligence law in effect at the time of said trial in Circuit Court, in Arkansas.

Appellant therefore knew it was a virtual certainty that undisputed evidence of negligence of the insured Mitchell

would be placed before the jury at the trial, and that because of the comparative negligence law in effect in Arkansas, even should the jury find the deceased Stanton guilty of contributory negligence, but should also find that the latter's negligence was less than that of the insured, that the verdict of the jury in favor of the plaintiff in said action for a substantial amount would not only be probable but would find support in the evidence.

Mr. Garner also knew that, in event of trial, a jury issue would develop as to one aspect of the facts upon which the defendant therein based his contention that Stanton was guilty of contributory negligence. Garner testified that one of the bases upon which he formed an opinion that the deceased Stanton was contributorily negligent, and one of the factors he considered in arriving at his recommendation as to settlement, was that the windshield and windows in Stanton's automobile at the time of the accident were covered with frost. This conclusion was based upon his information that during the preceding night said automobile was in an open carport; that the deceased had driven said automobile only about one block from his home that morning to the scene of the accident; and that the temperature then existing was conducive to the formation of frost. However, each of the witnesses Perrin and Harris was in a position to see the condition of Stanton's automobile almost immediately after the accident, and each thereof testified he did not see any frost on the windows of same. The ambulance driver, Satterfield, who had a similar opportunity to notice frost on said automobile, if such had existed, testified that he saw none, and similar testimony was given by Campbell, who arrived some time later. In the deposition of Mitchell, taken on March 10, he testified he went to the Stanton automobile after the impact and observed both Colonel Stanton and his automobile and, in response to the question, "Was there any frost on the Stanton car?", replied, "That I couldn't say."

Mr. Garner further testified (on the trial below) that prior to trial in Circuit Court he knew the case could be settled for $9,500.00, and that Mitchell requested settlement be made within the policy limits.

"While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith." American Fidelity & Casualty Co. v. G. A. Nichols Co. (10 Cir.), 173 F.2d 830, 832.

"The Supreme Court of South Carolina, in Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346, 349, used this language:

" 'The charge that it was the duty of appellant to compromise the claim if that was the reasonable thing to do is supported by authority.

" 'In the annotation of the case of United States Casualty Co. v. Johnston Drilling Co., (161 Ark. 158, 255 S.W. 890), 34 A.L.R. 727, it was said: "It has been held that an insurer against liability for accidents which assumes the duty of defending a claim owes the assured the duty of settling the claim if that is the reasonable thing to do." Citing: Cavanaugh Bros. v. General Accident F[ire] & L[ife] Assur. Corp., 79 N.H. 186, 106 A. 604.' " Parker, supra, 341 S.W.2d p. 41.

In Milbank Mutual Insurance Company v. Schmidt, supra, 304 F.2d at p. 645 (which involved the issue of bad faith on the part of the insurer for failure to settle, and in which negligence was not involved), this Court stated that "No precise formula can be prescribed of determining the sufficiency of the evidence on the good faith issue", and quoted with approval, as the test to be applied, the statement of the Court in Tennessee Farmers Mutual Ins. Co. v. Wood (6 Cir.), 277 F.2d 21, 35, as follows: "If the proof, in the light of all the relevant circumstances, and infer-

**496**

ences to be drawn therefrom is such as to leave a reasonable basis for disagreement among reasonable minds, the question of good faith of the insurer in the handling of the claim and conducting compromise negotiations is for the jury."

 We are satisfied that, taken as a whole, there was an adequate evidentiary basis upon which the jury might reasonably conclude that the appellant negligently and in disregard of the interests of its insured, and in violation of its duty to him, refused to accept a proffered advantageous settlement—a settlement which could have been effected for only $1,500.00 in excess of the offer made by appellant, and approximately one-fourth of the amount of the verdict returned by the jury.

 We will next consider appellant's contention that, as a matter of law, "Until the appellee has paid the excess judgment he has no accrued cause of action". It is appellee's contention that the payment by Mitchell (the insured judgment-debtor) of the amount of the judgment that is in excess of the policy limits and which has not been paid by the appellant insurer, is a condition precedent to a cause of action therefor by Mitchell against appellant, and that such is the law of the State of Arkansas.

This question has not been specifically determined by the Supreme Court of Arkansas. Therefore, it was the trial court's function herein to determine what that Court would probably rule in a similar case. King v. Order of United Commercial Travelers of America, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608; Billings v. Investment Trust of Boston (8 Cir.), 309 F.2d 681. The question of law here under consideration was squarely presented to the trial court.

"As those matters are presented to us we are, in effect, asked to put ourselves in the place of the District Judge and * * * apply conclusions of law thereto such as appellant deems the local law of Arkansas. This we cannot do. Palmer v. Aeolian Co., 46 F.2d 746 (8 Cir. 1931), cert. den. 283 U.S. 851, 51

S.Ct. 560, 75 L.Ed. 1458. We can only review judgments of the District Courts for errors of law and abuse of discretion committed in the concoction of their judgments. The burden to demonstrate error as to those matters is on appellant. Coca Cola Bottling Co. of Black Hills et al. v. Hubbard, 203 F.2d 859 (8 Cir. 1953). That burden is a peculiarly heavy one in a diversity case controlled by state law. Western Casualty & Surety Co. v. Coleman, 186 F.2d 40 (8 Cir.) 1950." Charter Oak Fire Insurance Company v. Mann (8 Cir.), 304 F.2d 166, 168.

We consider this issue to be a "doubtful question" of state law. Therefore, under the well-established principle stated by this Court in Homolla v. Gluck, 8 Cir., 248 F.2d 731, oft-repeated and recently restated by us in Charter Oak Fire Insurance Company v. Mann, supra, " * * * we will not substitute our opinion * * * for that of the District Court in a diversity action, where it is not clearly demonstrated that a Federal District Judge has misapplied the local law of his State."

Having in mind the above-stated principles of law, we must now decide whether the trial court reached a permissible conclusion. Frank B. Connet Lumber Co. v. New Amsterdam Casualty Company, supra.

The law in Arkansas is well settled that a cause of action in tort does exist in favor of an insured against his insurer where the insurer, either through negligence or in bad faith, fails to settle a claim against the insured within the policy limits, when it is possible to do so, and the question of whether or not the insurer, in refusing to settle, was negligent or acting in bad faith, is a question of fact for jury determination. Southern Farm Bureau Casualty Insurance Co. v. Parker, 232 Ark. 841, 341 S.W.2d 36 (1960); Southern Farm Bureau Casualty Insurance Co. v. Hardin, 351 S.W.2d 153 (Ark.1961). This proposition is settled law, and is not here in dispute. Our problem arises from the fact that, as pointed out in the briefs and confirmed

by our own research, the Supreme Court of Arkansas has never specifically passed on the point now before us.

It is true that in the Parker case, supra, the trial court (Benton County Circuit Court) instructed the jury that it was necessary for Parker, the insured, to prove, among other things, that he had had to pay the $1,500, which he was seeking to recover, over and above the $5,000 limit of the policy. That was an uncontroverted and uncontested issue in the trial court. On appeal the Supreme Court of Arkansas had no occasion to, and did not, discuss or determine the question whether the payment of an excess judgment by an insured was a condition precedent to the maintenance of an action against his insurer to recover for its failure to settle a claim within policy limits. The judgment was affirmed. Certainly the Parker case cannot be regarded as any clear indication as to what the Supreme Court of Arkansas would hold the law to be, were this question squarely presented to it.

No useful purpose would be served by a detailed analysis of the various cases cited in counsels' briefs, and those found as a result of our own research. After carefully considering all thereof, it is our conclusion that the main authorities cited by appellant in support of its contentions on this point, (including Dumas v. Hartford Accident & Indemnity Co., 92 N.H. 140, 26 A.2d 361; Universal Automobile Insurance Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, rehearing denied 126 Tex. 282, 87 S.W.2d 475; and Harris v. Standard Accident and Insurance Company (2 Cir.), 297 F.2d 627) represent the minority view, and that the majority view is set forth in those cases cited by appellee. See: Wessing v. American Indemnity Co. (D.C.Mo.1955), 127 F.Supp. 775; Lee v. Nationwide Mutual Insurance Co. (4 Cir.), 286 F.2d 295; Smoot v. State Farm Mutual Automobile Insurance Co. (5 Cir.), 299 F.2d 525; Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785; Alabama Farm Bureau Mutual Casualty Insurance Co. v. Dalrymple. 270

Ala. 119, 116 So.2d 924; Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 97 N.W.2d 168; Murray v. Mossman, 56 Wash.2d 909, 355 P.2d 985; and Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404.

An interesting and comprehensive discussion of the law on this point and, incidentally, a suggestion as to what the Supreme Court of Arkansas might do with this problem if and when it is ever squarely presented with it, may be found in Arkansas Law Review, (1955–56) Vol. 10, p. 138.

It is apparent that the trial court (a District Judge having many years of experience as a United States District Judge in Arkansas, and well versed in the local laws of that state), in overruling appellant's motion for a directed verdict and judgment notwithstanding the verdict, was of the opinion that in Arkansas the payment by Mitchell of the amount of the judgment that is in excess of the policy limits and which remains unpaid was not a condition precedent. In our opinion the trial court reached a permissible conclusion as to this "doubtful question of state law", and appellant has wholly failed to demonstrate that the trial judge, in arriving at that conclusion, misapplied the local law of Arkansas.

■ Appellant specifically assigns as error the trial court's giving (over appellant's objection) of instruction number seven, which, among other things, provided as follows: .

"However, in this connection you are instructed that in determining the issue of whether the defendant, Southern Farm Bureau Casualty Insurance Company, acted in good faith or was negligent in refusing to settle the case within the policy limits, you may consider along with all the other evidence in the case whether the defendant herein, Southern Farm Bureau Casualty Insurance Company negligently failed to properly investigate the circumstances and facts to ascertain for it-

self all the available evidence on the issues of liability."

Appellant's objection, as briefed and argued herein, is that there is insufficient evidence which would warrant the trial court to submit the issue of negligent investigation to the jury. We disagree, for the reasons hereinbefore in this opinion stated. A part of the relevant evidence as to the issue of negligence of appellant was the manner and extent of its investigation.

We believe the following comments of the Supreme Court of Arkansas in Hardin, supra, 351 S.W.2d at p. 156, are applicable:

"Appellant complains of the plaintiff's instruction * * *, which told the jury, among other things, that it could consider whether the defendant, Southern Farm Bureau Casualty Insurance Company, failed to properly investigate the case. Whether the insurance company properly investigated the case was a question of fact and there is some evidence to the effect that a proper investigation was not made to determine the full extent of Calhoun's injuries." Herein there is some evidence to the effect that a proper investigation was not made to determine the probable liability, and the probable extent thereof, of the insured, to Stanton's survivors and estate, and such evidence was adequate for submission to the jury.

Appellant urges as reversible error certain rulings of the trial court excluding evidence.

It contends that said court erred in refusing to permit appellant to inquire on cross-examination of appellee Mitchell concerning the circumstances of the writing of the letters of April 28 and May 25, 1960. These are the letters mailed by Mitchell to appellant in which he demanded that it accept the offer of claimant to settle the claims within policy limits. The letters were admitted at the trial as plaintiff's (appellee's) exhibits. Appellant sought to cross-examine Mitchell as to the circumstances under which they were written, and the person who actually typed the same. Counsel for appellant informed the court, in chambers, that the cross-examination sought would follow the lines as set forth in two discovery depositions of Mitchell which had been taken previously on behalf of appellant. The trial court advised counsel that such cross-examination would not be permitted. The two depositions were introduced as appellant's offer of proof and made a part of the record. No objection was made to this procedure. Appellee's attorney objected to the offer of proof, which objection was sustained.

In the deposition referred to, Mitchell testified that each of these letters was actually typed by a Mr. Bob Flocks, who had supervision of a truck line, and whose office was in the general offices of the Arkansas-Best Freight System in Fort Smith; that prior to visiting Mr. Flocks, he had discussed the matter of liability of the appellant with his (Mitchell's) employer, Mr. Gerald Edwards; that Edwards told appellee that he knew Flocks personally, had done work for him, and that he knew "quite a lot about insurance policies"; that, on the first visit to Flocks, he was accompanied by Edwards, but went alone the second time; that he told Flocks what to put in each of such letters, and that Flocks typed them; that Flocks received all of the information contained in the letters from him; that he (appellee) read the letters after they were typed, intended to sign them, and was under the impression that he signed them; that the letters were mailed by him (Mitchell), and that when Garner asked him who had written the letters he refused to tell, because "I didn't think it was important to drag Mr. Flocks into this". In the deposition, appellee stated that prior to the writing of such letters he had no conversation whatever with Mrs. Stanton and no understanding, directly or indirectly, with her or her attorneys concerning the same. To matters referred to in many questions propounded during the deposition, appellee professed to have no recollection.

In the light of the facts disclosed by the discovery depositions, it was wholly immaterial who actually typed the letters. Appellant argues as a basis for its right to cross-examine appellee concerning the circumstances under which the letters were written, that the same would have shown appellee's motives therefor, and that such cross-examination was desired for purposes of impeachment. It is evident from the depositions that such cross-examination would not have had the character of impeachment. The motives of appellee for writing the letters demanding settlement within the policy limits related to a collateral matter. Such written demands were not a prerequisite to the maintenance by appellee of his cause of action against appellant. The record is devoid of any evidence that the appellee, directly or indirectly, deceived or misled appellant, or hindered or crippled it in the defense of the action. Appellee's testimony that he never refused or failed to cooperate with appellant's counsel in preparing the defense of the suit and in defending it is uncontradicted. Mr. Garner testified that appellee's testimony at the trial in the Sebastian County Circuit Court was substantially the same as contained in his written statement given to Mr. Sorrows, substantially the same as the information given to him, and substantially the same as contained in his deposition of March 10, 1960. While the letters indicated a genuine and understandable concern on the part of appellee as to the outcome of the pending trial and a desire to eliminate the possibility of a judgment against him in excess of the policy limits, nothing contained therein indicated that he had changed his position from that with which appellant was fully informed. Furthermore, the policy itself required cooperation by the insured, and appellant made no plea of failure of cooperation or bad faith on the part of appellee. In this connection it should be noted that appellant paid the full amount of the policy limits as a credit on the judgment.

Also included in the rulings of the trial court excluding evidence which are urged as being reversible error, is the refusal of the trial judge to allow appellant's witness, Garner, to give reasons for certain answers and to testify concerning the Mitchell letters of April 28th and May 25th, hereinbefore referred to.

During the cross-examination of Garner, the following questions were asked, to which Garner gave the following respective answers:

Q. "Would you say, Mr. Garner, that the jury's verdict was contrary to the law and the evidence?" A. "I will say this, Mr. Harper—"

Q. "Would you answer my question? Would you say that. Answer yes or no and then explain it." A. "Yes. I think the jury's verdict was based upon sympathy."

Q. "You think it was contrary to the law and the evidence?" A. "Yes, with that explanation, that it was a sympathetic verdict."

Thereafter Garner testified that he did not recall whether the trial court erred in his instructions to the jury, that he did not appeal and that there was evidence to support the verdict.

On redirect examination appellant's attorney attempted to examine Garner as to the reason for his opinion that said verdict was a sympathetic verdict, and was not permitted to do so. At the time the offer was made out of the presence of the jury as to what that testimony would be, appellant's counsel also informed the court he desired to examine Garner as to whether he had talked with Mitchell concerning the letters of April 28th and May 25th. The court sustained objection thereto.

The asserted right of appellant to examine Garner on redirect examination concerning his opinion that the jury's verdict in the Sebastian County Circuit Court was based upon sympathy (expressed during his cross-examination), likewise related to a collateral matter, as

did the desired examination of Garner concerning an alleged conversation which he (Garner) had with appellee regarding the letters of April 28th and May 25th.

"The scope of cross examination is within the judicial discretion of the trial court." Holmes v. United States (8 Cir.), 134 F.2d 125, 135. See also: Hewitt v. United States (8 Cir.), 110 F.2d 1, 9; Berra v. United States (8 Cir.), 221 F.2d 590, 594; Railway Express Agency, Inc. v. Epperson (8 Cir.), 240 F.2d 189, 194; McDonnell v. Timmerman (8 Cir.), 269 F.2d 54, 62.

"The trial court has a broad discretion with respect to the scope of cross examination of a witness upon collateral matter. Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680; Davis v. United States, 8 Cir., 229 F.2d 181, 185; United States v. Manton, 2 Cir., 107 F.2d 834, 845. In the Manton case, Justice Sutherland, sitting as a circuit judge, states (107 F.2d at page 845):

"'* * * The extent to which cross-examination upon collateral matters shall go is a matter peculiarly within the discretion of the trial judge. And his action will not be interfered with unless there has been upon his part a plain abuse of discretion. 3 Wharton's Criminal Evidence (11th Ed.) § 1308. See Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624. * * *'"

Mays v. United States (8 Cir.), 261 F.2d 662, at page 665. Also see: Davis v. United States (8 Cir.), 229 F.2d 181, 185, cert. denied 351 U.S. 904, 76 S.Ct. 706, 100 L.Ed. 1441.

Appellant has failed to demonstrate that, by his rulings here complained of, the trial judge abused his discretion.

■ Appellant contends that the trial court committed reversible error by striking the testimony of appellant's witness, Robert Hendren, and instructing the jury to disregard the same.

Appellee's witness, George Perrin, testified on direct examination that he was acquainted with Charlie Garner

prior to the trial of the Stanton case in Sebastian County Circuit Court, and that neither Garner nor anyone else representing appellant interviewed him or talked with him about the accident prior to that trial. On cross-examination the following questions were asked, to which the following answers were given:

Q. "Mr. Perrin, as I understand you, you say that you had known Charlie Garner prior to the Stanton accident?" A. "Yes, sir."

Q. "Had he ever represented you in any connection that you recall of?" A. "No, sir."

Q. "Sir?" A. "His firm has."

Thereafter, the testimony indicated that Mr. Garner was associated with a Mr. Sexton, and that the representation of Mitchell was in connection with "the McBride estate". The cross-examination continued:

Q. "Are you telling the court and jury here that you just have no recollection of Mr. Garner ever talking to you about this Stanton accident or are you telling them positively that he did not?" A. "I am saying positively that Charles Garner didn't come to me and say that he represented the State Farm (sic) or to get any statement from me of any kind regarding this accident. If we discussed the accident at all it was just in a casual conversation."

Q. "But you are not saying that you didn't have that conversation?" A. "I am saying that I don't recollect it."

Appellant called, as a defense witness at the trial, Mr. Robert Hendren. He testified that he was the Circuit Clerk in Crawford County, Arkansas, and as such was the custodian of the records of the Circuit Court of that county. He testified that he had the original file of a lawsuit filed in that court by George Perrin against "the McBrides" on July 15, 1960; and, when asked "Who is the attorney for Mr. Perrin?", replied, "Sam Sexton and Charles R. Garner, attorneys for plaintiff, signed by Charles R. Gar-

ner." When further inquiry was made concerning the file, and objection was made thereto, the following record was made:

"The Court: I am going to let the testimony of Mr. Hendren stand, but I don't think it is necessary to introduce the record. He has testified when the lawsuit was filed.

"Mr. Hardin: That is all we are concerned with.

"The Court: I will overrule your objection but I will let it stay in."

Cross-examination of this witness was then waived. Thereupon the court recessed for the day.

The following morning when court reconvened, the trial judge referred to Mr. Hendren's testimony, referred to the objection thereto by Mitchell's attorney upon the ground that it was immaterial, incompetent and inadmissible, and stated that, "Since thinking about the matter I have concluded that the testimony of that witness is not material nor is it competent and I am striking it from the record and instructing the jury to disregard it in toto, the testimony of Mr. Hendren, over the objection of the defendant."

Objection to such ruling was promptly made by appellant, who here argues that Mr. Hendren was called to impeach Mr. Perrin concerning his testimony hereinbefore quoted, that his testimony was competent to and did in fact impeach Mr. Perrin, and that the action of the trial judge was prejudicial and constitutes reversible error.

The Mitchell-Stanton accident occurred on December 30, 1959; the trial of the action for damages arising therefrom, in the Sebastian County Circuit Court, commenced on May 31, 1960, and the investigation concerning the same occurred between those dates. The lawsuit referred to by Mr. Hendren was filed on July 15, 1960. The filing of that lawsuit in Hendren's office approximately six weeks after the trial of the Mitchell-Stanton case, by the firm of Sexton and Garner, was no evidence that Mitchell and Garner had conversed about the Mitchell-Stanton accident prior to the trial of the case arising therefrom. Furthermore, the fact that the files disclosed Mitchell's attorney in that lawsuit was the firm of Sam Sexton and Charles R. Garner, and the complaint was signed by Mr. Garner, would not, of itself, be inconsistent with Mitchell's testimony.

The short answer to appellant's argument as to this point is that the testimony of Mr. Hendren did not qualify as impeachment, was incompetent for that purpose, and the ruling of the trial court was correct and proper.

 Finally, appellant complains that the District Court erred in its judgment of January 16, 1962, wherein the appellant was directed to satisfy in full the state court judgment against appellee. It is argued that such a direction requires appellant to pay, as a part of such judgment, statutory interest on the state court judgment, which was rendered on June 1, 1960, contrary to the established law of Arkansas, as declared in Southern Farm Bureau Casualty Insurance Company v. Hardin, Ark., 351 S.W.2d 153. It is true, as appellant contends, that the Supreme Court of Arkansas, in Hardin, supra, determined that the plaintiff in that case was not entitled to interest on an excess judgment from the date it was previously rendered against him, but only from the date of the judgment entered in his favor in the action brought by him against the insurer. However, we agree with appellee here that Hardin, supra, is distinguishable from the case we are considering, for in Hardin the plaintiff had satisfied in full the judgment against him, and then proceeded against the insurer in an action in tort. Such is not the case here. The judgment against appellee has been only partially satisfied—by appellant. The amount of damages—and the liability therefor—which appellee became legally obligated to pay, was definitely fixed on June 1, 1960. The state court judgment of that date cannot be satisfied until and unless the interest thereon is paid, in addition to

the principal amount thereof. Even though this action is not one brought on the policy of insurance, but instead is one in the nature of a tort action, we must remember that the appellant here was bound by said policy to pay *all* sums which appellee (insured) should become legally obligated to pay. See: Augustin v. General Accident Fire and Life Assurance Corporation, Ltd. (7 Cir.), 283 F.2d 82, 85.

We refer to that part of this opinion wherein we discussed the application of local law, in a diversity action, by the Federal District Court. What we said there is applicable here—that is, we will not disturb the judgment of a district court where it is not clearly demonstrated that he has misapplied the local law of his state. In our opinion the trial court reached a permissible conclusion, and appellant has failed to demonstrate that such court, on this point, misapplied the local law of Arkansas.

The judgment appealed from is Affirmed.