313 P.2d 404

**FARMERS INSURANCE EXCHANGE, a business association, Appellant,**

v.

**George V. HENDERSON and Helen W. Henderson, husband and wife, Appellees.**

No. 6151.

Supreme Court of Arizona.

June 26, 1957

Fennemore, Craig, Allen & McClennan, Philip E. von Ammon, Phoenix, for appellant.

Norman Herring, Tucson, for appellees.

WINDES, Justice.

The appellant, Farmers Insurance Exchange, issued to appellee, George Henderson, a public liability insurance policy insuring him against claims for death or bodily injury and property damage resulting from the operation of Henderson's car. The limits of the policy for death or bodily injury was $5,000 for one person and $10,000 for one accident and $5,000 for property damage. There was a collision between the Henderson car when operated by his employee, one Whitehead, and an automobile operated by Charles Breesman. Three actions were filed for damages resulting from the accident. One action was by an occupant of the Henderson car against Henderson, Whitehead and Breesman, one by an occupant of the Breesman car against Henderson and Whitehead, and one by Breesman against Henderson and Whitehead. This latter action was tried in the superior court. The present case is a suit by Henderson against the company for damages claimed to have resulted from the failure to settle the Breesman claim for an amount within its policy limits when opportunity was presented for such settlement. A jury trial resulted in a verdict and judgment against the company in the sum of $45,000. The company appeals. The appellant will be referred to as the company and individuals by name.

The principal questions presented for solution are the extent of the obligations of the insurer to the insured to settle within the policy limits a claim against the insured and, if liability is established, the correct measure of the insured's damages.

The policy was what is known as a standard automobile insurance policy, containing the usual provisions requiring the company to defend any suit against the insured and giving the company the right "to make such investigation and settlement of any claim or suit as it deems expedient". The jury answered a special interrogatory that the company did not act in good faith when it refused to settle. A principal point raised by the company is that the evidence is not such as to legally justify the jury in finding bad faith on the part of the company.

There has been much litigation in other jurisdictions resulting in declarations of an insurer's obligations to the insured when exercising the right to decide whether a claim under the policy shall or shall not be settled within the policy limits when there is a possibility of the claim exceeding such limits. There has been no expression from this court on the subject. The law in this regard is of comparatively recent development and the cases are not entirely harmonious. There is now no serious disagreement that when a company assumes control of litigation based on a claim covered by the policy, it cannot in deciding whether settlement is to be made seek only to protect its own interest but must give some consideration to the protection of the insured's interest in the event there is a possibility of a judgment exceeding the policy limits. Annotation, 40 A.L.R.2d 168, 181. An insurer which completely ignores the interests of the insured under such conditions could not be said to have acted in good faith.

The principal difficulty experienced by the courts has been in fixing a test for the degree of consideration the insurer must give the insured's interests in order to have met its legal obligation in this respect. Different standards have been adopted. There is authority to the effect that the insurer may give paramount consideration to its interests. Wisconsin Zinc Co. v. Fidelity & D. Co., 162 Wis. 39, 155 N.W. 1081; Hilker v. Western Auto. Ins. Co., 204 Wis. 1, 231 N.W. 257, 235 N.W. 413. Other jurisdictions have said paramount consideration must be given to protect the insured. Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346. A third position is that the insurer must give equal thought to the end that both the insured and the insurer shall be protected. American Fidelity & Casualty Co. v. G. A. Nichols Co., 10 Cir., 173 F.2d 830; National Mutual Casualty Co. v. Britt, 203 Okl. 175, 200 P.2d 407, 218 P.2d 1039. The latter standard was adopted by the trial court and we approve. It occurs to us that when the insurer is defending litigation against the insured, employs attorneys to represent the interests of both and has sole power and opportunity to make a settlement which would result in the protection of the insured against excess liability, common honesty demands that it not be moved by

partiality to itself nor be required to give the interests of the insured preferential consideration. A violator of this rule of equality of consideration cannot be said to have acted in good faith. Fidelity & Casualty Co. v. G. A. Nichols Co., supra. The enunciation of the rule is not difficult but its application is troublesome. It is a matter of consideration of comparative hazards.

With reference to the particular circumstances of this case, there was evidence that on February 16, 1953, Breesman offered to settle his claim for $5,000 personal injury and about $1,300 property damage. Ten days later the attorneys for the company wrote a letter to its branch claims manager that related in detail the information they had and made the following recommendation:

"In view of the rather strong case of negligence which the plaintiff can establish and the fact that his injuries were admittedly serious although there will be a conflict in evidence as to their permanence and in further view of the fact that we must rely largely upon the testimony of Alice Jacobson and Eddie Whitehead who in our opinion are weak witnesses and rather unpredictable as to what they will say upon cross examination, it is our recommendation that an attempt be made to settle the case for an amount in the neighborhood of $2500.00."

On March 5th, the personal attorneys for Henderson wrote the attorneys for the company advising the acceptance of any offer of settlement for an amount of $4,000 or less, and advising that if such an opportunity were presented and the trial resulted in a judgment exceeding the policy limits, they would insist that the company pay the full amount of the judgment. Five days later Breesman offered to settle his personal injury claim for $4,000 and the property damages estimated at about $1,300. These offers were rejected and the case went to trial on March 12th. While the jury was deliberating, an offer was presented to settle for $6,000 which was not accepted by the insurer. The jury returned a verdict of $18,284. The company appealed offering to pay the cost of a supersedeas bond. Henderson advised the company he was unable to furnish the bond for the reason he did not possess the requisite collateral which the surety company required.

While the appeal was pending, execution issued and Henderson's business property (a laundry) was levied upon. Thereafter, Breesman offered to stay the sale under execution pending a disposition of the appeal if the insurance company would pay the full limit under the policy in the sum of $6,500. This plan was rejected by the company for the reason that it could secure no assurance that in the event the case was reversed, it would be repaid the $6,500.

In this connection the company offered to pay $8,000 and dismiss the appeal if Henderson could make a satisfactory settlement with Breesman for the excess liability. The property was sold under execution to Breesman for $4,000 subject to encumbrances and the judgment credited. The case on appeal was reversed by this court with direction for a new trial. Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059. Thereafter, the company settled with Breesman for $6,200 of which $4,000 was paid direct to Henderson on behalf of Breesman for reimbursement of the execution taken and did not charge Breesman with costs on appeal of approximately $1,000. The aggregate cost to the company including costs was approximately $7,200.

At the time the company refused to settle for $4,000 plus property damage of approximately $1,300, it had information claimant's injuries were admittedly serious; that following the injury he had remained unconscious for six days and hospitalized for sixteen days; that he was troubled with frequent headaches; that his eyes bothered him; and that he had lost ten weeks' work. The company was advised that the special damages suffered were over $2,400. It had information indicating strongly that Henderson's employee would probably be proven to have been negligent and the only defense worthy of consideration was contributory negligence. To establish this defense there were available only two eye-witnesses and these were both weak and undependable. The only offer before the verdict was $2,500, approximately the admitted special damages.

By refusing the $4,000 plus property damage and submitting to trial, the limit of the company's hazard under the policy limits was an additional $1,200. Admittedly the property damage could not exceed $1,500. The jury might infer under the conditions that a plaintiff's verdict was strongly probable; that it would greatly exceed the policy limit; and that the insured's loss hazard was much greater than that of the company. After the case was submitted but before the verdict, the insurer by not settling for $6,000 incurred a $500 loss hazard and Henderson a great deal more. The jury could conclude that the company in turning down the opportunities to terminate this litigation was guided principally by its own risk and ignored or at least did not give equal consideration to the risk which it compelled Henderson to incur. The jury therefore was entitled to conclude that the company did not act in good faith.

Another major question presented is what was the extent of the obligation of the company, if any, to protect Henderson against the sale of his property under execution pending the appeal. The policy provided that the company would pay the premiums on appeal bonds required but

without obligation to furnish such bonds. The court in substance instructed the jury that the company was not obliged to furnish a supersedeas bond but was obliged to pay pending appeal the sum of $5,000 for personal injury and $1,500 for property damage, irrespective of whether it was or was not guilty of bad faith in not settling the law suit, and if the jury found the company refused to pay these amounts in partial satisfaction of the judgment, it breached its contract. The court in another instruction advised the jury that if it found the company breached the contract, the plaintiff should recover. The combined instructions authorized the jury to return a verdict against the company without a finding of bad faith. Admittedly, the company did not pay the $6,500 pending appeal. Hence this amounted to a peremptory instruction for the plaintiff.

■ The instruction that the company was obliged to pay the amounts stated pending appeal in the absence of bad faith was error. Under the contract of insurance it was expressly agreed that the company was not obligated to furnish supersedeas. The purpose of supersedeas is to be relieved of the obligation to pay a judgment pending appeal. The parties' contracting that there was no obligation to furnish the supersedeas bond is the equivalent of contracting that the judgment does not have to be paid pending appeal. We are unable to see how it could fail to have this effect.

Otherwise, the provision means nothing and would not affect the company's obligations pending appeal. To require the payment of the policy limits would indirectly require the company to furnish supersedeas when under its contract it is not so obligated. We rule, therefore, that, assuming the company has acted in good faith in refusing settlement, by reason of the express provision of the contract relieving it of the obligation to supersede a judgment, it may appeal without furnishing supersedeas and is not obligated to the insured to pay the judgment to the extent of its policy limits pending the disposition of the case by the supreme court. We are not unmindful that the state of Alabama has reached a contrary conclusion in case of Ohio Cas. Ins. Co. v. Gantt, 256 Ala. 262, 54 So.2d 595. We are not impressed with the reasoning of that case and do not choose to follow it.

■ In the event good faith obliges the company to terminate the litigation by settlement, its failure to do so renders it liable as between the insured and insurer for the full amount of the judgment. It has been suggested Henderson has no cause of action for damages until he has actually paid the judgment. While there is authority to the contrary, we think the better rule is that when insured has become obligated to pay a judgment wrongfully imposed upon him, his cause of action accrues.

Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785. The company cannot be allowed to require Henderson to pay or supersede a judgment which it wrongfully imposed upon him. It could not seek shelter under this provision of the contract when its wrong created the necessity for supersedeas. The company would have no right under such conditions to require Henderson to pay or supersede the judgment for its protection. If it wrongfully created the situation, the company must protect Henderson if it desires to appeal. This question should be presented to the jury in harmony with these principles.

The company had presented to it two methods of protecting Henderson by preventing sale of his property. The judgment creditor offered to postpone the sale if the company would pay the policy limits of $6,500. This it refused because there was no assurance that in the event of reversal, it could recover such payment. If the company did not wish to assume this risk, it should have superseded the entire judgment for the reason that if it acted in bad faith, it was obligated to pay the same.

The company claims the court erred in giving plaintiff's instruction number 3. This is a lengthy instruction concerning the obligation of the insurer in accepting or rejecting an offer of settlement within the policy limits. The instruction is in harmony with the law in this respect as announced herein and is therefore correct. Exception was taken to plaintiff's instruction number 4 upon the ground that it purported to impose liability upon the company for mere negligence. There is no semblance of merit to this contention. The instruction expressly told the jury that negligence alone was not enough to impose liability but could be considered in determining whether there was bad faith. The instruction was correct. Southern Fire and Casualty Co. v. Norris, supra.

On the question of damages Henderson submitted and the court gave instructions that if the jury found the company breached its contract, it could assess damages for the following items: loss of the property as a going business and interest from time of loss, humiliation, pain and suffering, attorney fees incurred by Henderson, loss of earnings, expenses of seeking employment including traveling expenses to that end, and his loss of business reputation and credit. Over the company's objection evidence on these items was admitted. Except as to the value of the business as a going concern and interest thereon from the time of its sale, the court erred in the admission of evidence and giving instructions on the foregoing items of damages.

The wrong involved is causing the destruction or conversion of insured's business property in satisfaction of the

company's obligation. The court correctly instructed that as a general rule the damages for the loss or destruction or conversion of a going business is its value at the time and place of destruction with interest. This is in accord with the pronouncements of this court. Jones v. Stanley, 27 Ariz. 381, 233 P. 598. The humiliation, mental pain, suffering and anguish incurred by the Hendersons was the direct result of the pecuniary loss suffered. If it is to be considered a breach of contract, to recover for these items the contract must be of such a nature that its breach would cause mental suffering for reasons other than the pecuniary loss. Restatement of Law, Contracts, section 341. If the wrong be considered tortious by causing the destruction or conversion of Henderson's property, the same measure of damages should obtain as that for conversion or destruction of property, that is, the value of the property with interest.

On the question of attorney fees as a proper element of damage in this type of suit, there are few judicial pronouncements. There is authority for the proposition that if the company violates its agreement to defend insured and insured is compelled to employ counsel for this purpose, he can recover the cost of such attorney fees for performing that which the company had agreed to perform. Christian v. Preferred Acc. Ins. Co., D.C., 89 F.Supp. 888. There also is authority that no such fees are recoverable when incurred for the purpose of protecting the insured's interests in a dispute with the company. Traders & Gen. Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142. The attorneys' statement in evidence reflects a charge in connection with a motion for new trial in the Breesman case; a charge for securing an injunction against Breesman to prevent execution; and a charge for preparing and filing a declaratory judgment and mandatory injunction suit against the company. Why it was necessary for Henderson to employ an attorney in connection with the motion for a new trial in the Breesman suit does not appear. The counsel employed by the company continued to handle this matter. The services rendered in the suit against the company and Breesman to prevent execution were in furtherance of protecting insured's interests and pertained to the subject matter of the present litigation. In the absence of contract or statutory authority such fees are not recoverable. Traders & Gen. Ins. Co. v. Hicks Rubber Co., supra.

The company contends that the measure of damages is the amount insured was compelled to pay over and above the policy limits. The position seems to be that when the case was settled after appeal and the sale and destruction of insured's business for the sum of $4,000 full restitution was made by returning to him the $4,000. This cannot be the law. If the company in good faith should have settled, Henderson's prop-

erty was wrongfully sacrificed and he is entitled to full restitution.

The judgment is reversed with instructions for a new trial on the entire case as to all issues.

UDALL, C. J., and PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.