**Steffenie LEHMAN, Plaintiff,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Defendant.**

**No. CIV 92–142 TUC SMM.**

United States District Court, D. Arizona.

July 20, 1992.

Denneen L. Peterson, Miller, Pitt & McAnally P.C., Tucson, Ariz., for plaintiff.

Thomas E. Johnson, Tucson, Ariz., Steven J. Labensky, Lewis and Roca, Phoenix, Ariz., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

McNAMEE, District Judge.

Plaintiff brought this action against her insurer seeking a declaratory judgment regarding medical insurance coverage for High Dose Chemotherapy–Autologous Bone Marrow Transplantation ("HDCT–ABMT") and compensatory damages for breach of contract, bad faith, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## I. INTRODUCTION

On June 15, 1992, this Court, after oral argument, granted Defendant's Motion for Partial Summary Judgment on Plaintiff's bad faith claim. Plaintiff did not contest Defendant's Motion for Partial Summary Judgment on the emotional distress claims.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A motion for summary judgment against a party is appropriate when that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

To prevail on the bad faith claim, Plaintiff had the burden of proving that Defendant intentionally denied coverage without a reasonable basis. *See Aetna Cas. & Surety Co. v. Superior Court of County of Maricopa*, 161 Ariz. 437, 440, 778 P.2d 1333, 1336 (App.1989). Defendant's conduct must be "consciously unreasonable"; mere mistake or negligence is insufficient to impose liability. *Trus Joist Corp. v. Safeco Ins. Co.*, 153 Ariz. 95, 103–04, 735 P.2d 125, 133–34 (App.1986). Plaintiff cannot prevail on a claim for bad faith where the claims are "fairly debatable." *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981).

In this case, the issue was whether Defendant acted reasonably in denying insurance coverage for HDCT–ABMT. Plaintiff's policy covers procedures which are "medically necessary." Defendant contends that HDCT–ABMT is not "medically necessary" because it is a relatively new and experimental treatment for multiple myeloma patients. Defendant also contends that there is insufficient evidence to conclude that omitting the procedure would adversely affect Plaintiff. In fact, Defendant argues, the consent form openly acknowledges the experimental nature and the serious risk accompanying this proce-

dure. Furthermore, Plaintiff's affidavits from Drs. List, Dalton and Hill were conclusory and did not explain the basis upon which the HDCT–ABMT was "medically necessary."

Both parties cite to relevant case law in support of their positions. It is apparent from these cases that courts, relying on a variety of facts dealing with a variety of types of cancer, are not in accord as to the issue of coverage for HDCT–ABMT. This is especially true in cases dealing with multiple myeloma. That courts differ on whether HDCT–ABMT is "experimental" is evidence that the issue is "fairly debatable". Because the basis upon which the coverage was denied was "fairly debatable" and Plaintiff failed to prove that Defendant was "consciously unreasonable" in denying coverage for HDCT–ABMT, this Court found no basis upon which Plaintiff could prevail on the bad faith claim. *See Aetna*, 161 Ariz. at 440, 778 P.2d at 1336.

Plaintiff also questioned the adequacy of Dr. Marr's, Second Vice President and Senior Medical Director of Claims, procedure in reviewing Plaintiff's claim. Plaintiff contends that Defendant should not have relied on the advice of its own advisory groups because such reliance creates an inherent risk of abuse. *Reilly v. Blue Cross & Blue Shield United*, 846 F.2d 416, 423 (7th Cir.1988), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). Although Dr. Marr is not a specialist in the field of Oncology, Plaintiff presented no evidence of abuse in the decision-making process or insufficiency of Dr. Marr's expertise to determine whether HDCT–ABMT was covered under the policy. Before denying coverage, Dr. Marr reviewed medical records, medical literature and standard textbooks, consulted with other physicians within the Mutual of Omaha, and visited facilities conducting HDCT–ABMT. The Court finds Defendant's pre-decisional investigation was adequate.

Plaintiff did not present specific evidence that Defendant acted in a "consciously unreasonable" manner. In fact, that Defendant provided coverage for all of Plaintiff's standard chemotherapy counters Plaintiff's allegations of bad faith against Defendant. For these reasons, the Court granted Defendant's Motion for Partial Summary Judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

## II. FINDINGS OF FACT

The Court having heard and considered the evidence presented at the trial, having observed the demeanor of the witnesses, and having considered the arguments of counsel, decides the action in favor of Defendant against Plaintiff, and makes the following findings of fact and conclusions of law:

1. Plaintiff is a resident of the State of Arizona. In July 1991, she was diagnosed with stage III multiple myeloma, an uncommon cancer of the plasma cells in the bone marrow for which no cure is known. The prognosis for multiple myeloma is poor and Plaintiff's expected survival, according to her oncologist, is approximately eighteen months on standard chemotherapeutic treatment.[1]

2. Defendant is a foreign corporation engaged in the insurance business and has conducted business within the State of Arizona.

3. Plaintiff is insured under an individual contract of health insurance issued by Defendant. The health insurance policy covers services or supplies that are "medically necessary." The policy defines "medically necessary" as a service or supply which:

a. is appropriate and consistent with the diagnosis in accord with accepted standards of community practice;

b. is not considered experimental; and

c. could not have been omitted without adversely affecting the insured per-

---

1. However, Defendant's expert witness testified that Plaintiff may survive up to three to five years because she is now in remission and has received interferon therapy. None of the medical experts could make more specific statements because of the limited data available on multiple myeloma patients.

son's condition or quality of medical care.

4. The terms "experimental" and "community" are not defined within the policy.

5. After her diagnosis, Plaintiff underwent nine cycles of standard-dose chemotherapy and interferon therapy, for which Defendant provided coverage under Plaintiff's policy.

6. By February 1992, Plaintiff's treating physician, oncologist Dr. Hill, concluded that Plaintiff was in "strong remission". However, because of the inherently poor prognosis of multiple myeloma, the remission is not permanent.

7. Dr. Hill informed Plaintiff of HDCT–ABMT after attending a medical conference given by Dr. Dalton. Dr. Hill told Plaintiff that the procedure is a new and exciting treatment that might offer her a "true chance for cure." Dr. Hill had not read any authoritative medical journals about the procedure before informing Plaintiff of her "chance for a cure." Nonetheless, Dr. Hill had informed Plaintiff that with standard chemotherapy, she would die within a year to a year and a half, but that with HDCT–ABMT, her survival would be doubled. Furthermore, Dr. Hill informed Plaintiff that the preliminary information on the procedure was most encouraging. At trial, Dr. Hill's own testimony clearly showed that he was not an expert on HDCT–ABMT and that he had very limited knowledge of HDCT–ABMT beyond what he had learned from Dr. Dalton's conference. At the time Dr. Hill rendered his advice to Plaintiff, Plaintiff was in the initial stage of her standard chemotherapeutic treatment and had not reached the state of remission.

8. Dr. Hill referred Plaintiff to Dr. Dalton, Director of Bone Marrow Transplantation at the University of Arizona Cancer Center ("Cancer Center"). Dr. Dalton proposed to treat Plaintiff utilizing HDCT–ABMT pursuant to a research protocol he designed for refractory (resistant to standard therapy) multiple myeloma patients. This protocol could not be utilized for patients who were in a state of remission.

9. From the discussion Plaintiff had with Dr. Hill, Plaintiff believed that HDCT–ABMT will extend her disease-free period from the cancer and, in December 1991, sought Defendant's pre-approval for the costs associated with the procedure at the Cancer Center.

10. When Plaintiff requested pre-approval, Dr. Dalton had only one protocol for multiple myeloma patients and it required the patients to be in a refractory state. (Plaintiff's Exhibit # 19). At that time, because Plaintiff had not completed her standard dose chemotherapy, it could not be determined whether she would become refractory. Because Plaintiff responded favorably to the first set of chemotherapy, she no longer qualified for the protocol designed for refractory patients. Dr. Dalton later drafted and submitted for approval a second protocol for patients in remission, for which Plaintiff currently qualifies. (Plaintiff's Exhibit # 20). The second protocol has not yet been approved by the Cancer Center. Furthermore, the experts' testimony showed that the medical community is not in consensus of whether it would be more beneficial than harmful to subject a healthy patient in remission to the high risk of HDCT–ABMT, thus creating a higher debatability for the experimental nature regarding the second protocol.

11. The HDCT–ABMT procedure involves three steps. First, the marrow is harvested from the patient's bone and frozen for preservation. Then, the patient undergoes a regimen of chemotherapy at higher than standard dose to kill the cancer cells. The high-dose chemotherapy substantially compromises the patient's immune system and clotting ability. After high-dose chemotherapy, the preserved bone marrow is transplanted back into the patient to "rescue" the patient from potentially life-threatening infection or hemorrhage. After the transplantation, the patient will be hospitalized for approximately 1–2 months during which time the stem cells (precursors to bone marrow) mature to establish a new and potentially cancer-free immune system and hemapoiesis.

12. While HDCT–ABMT is an accepted and non-experimental treatment for other types of cancer, there is no consensus, based on medical research, that HDCT–ABMT is an accepted treatment for multiple myeloma patients in either refractory state or remission.

13. The HDCT–ABMT is performed for multiple myeloma patients in several facilities specializing in cancer research and treatment within the United States. Although high-dose chemotherapy kills more cancer cells than standard chemotherapy, there is no medical evidence that HDCT–ABMT procedure is a cure for multiple myeloma.

14. The HDCT–ABMT is subject to the approval of the University of Arizona's Human Subjects Committee ("HSC"). The HSC is required by the Food and Drug Administration ("FDA") and Department of Health and Human Services to protect rights and welfare of patients involved in medical research.

15. The HDCT–ABMT is a Phase II Protocol which is used to evaluate and collect data for the therapeutic efficacy of drugs for treatment of multiple myeloma. According to medical experts, only about three hundred (300) multiple myeloma patients have undergone HDCT–ABMT to date. All of these patients received the treatment in phase I and phase II clinical trials, in which researchers study drug toxicity and the effectiveness of the procedure on the cancer.

16. The drug used in Dr. Dalton's protocol is intravenous Melphalan at high doses. While not a new drug, the intravenous administration and the dosage of Melphalan described in the protocol have not been approved by the FDA for standard medical usage. The dosage described in the protocol exceeds by several times the labeled dosage approved by the FDA.

17. Medical literature does not provide adequate information from which the medical community may reach a conclusion about the effectiveness of HDCT–ABMT for multiple myeloma patients.

18. Although HDCT–ABMT is performed in numerous medical facilities within the United States, the protocols for the procedure differ between the facilities and a variety of combinations or series of chemotherapeutic drugs are used for each protocol. For example, the National Institute of Health's ("NIH") protocol (Defendant's Exhibit # 17) uses Total Body Irradiation in combination with different chemotherapeutic drugs than does the protocol at the Cancer Center.[2] The evidence presented at the trial clearly establishes to the Court that all of these protocols are experimental as they relate to multiple myeloma.

19. To date, Dr. Dalton has performed only one HDCT–ABMT protocol on a multiple myeloma patient. That patient expired before the result of the procedure could be obtained for data.

20. According to Dr. Dalton, even the facilities performing similar protocols as the Cancer Center have only performed limited number of procedures because of the rare occurrence of multiple myeloma. Furthermore, HDCT–ABMT is not available at community health institutions.

21. Federal Law requires Plaintiff to sign an informed consent form describing HDCT–ABMT procedure. This form refers to the procedure as a "research study" for multiple myeloma patients. The form also states that there is no guarantee of a benefit to Plaintiff from the procedure, and the treatment may even be "harmful." [3] (Plaintiff's Exhibit # 19)

22. The protocol document drafted by Dr. Dalton and submitted for institutional approval utilizes the words "investigational" and "study." The objectives of the protocol are to (1) "evaluate therapeutic efficacy and toxicity of high dose Melphalan;" (2) "assess the feasibility of measuring multi-drug resistance;" and (3) "deter-

2. Although not determinative of this case, Plaintiff, because of her current health and state of remission, has been accepted to participate in a HDCT–ABMT protocol for multiple myeloma patients at the NIH in September 1992.

3. According to experts, the morbidity rate from the procedure itself is five to ten percent (5–10%).

mine the feasibility of conducting such high dose therapy in a multi-institutional settings ... as a prelude to future trials for patients earlier in the disease course." (Plaintiff's Exhibit # 19)

23. The HDCT–ABMT for stage III multiple myeloma is in an early stage of development and further studies are necessary to determine its efficacy. Medical experts for both parties agree that current state of medical knowledge support a conclusion that the procedure is an "experimental" rather than an accepted standard of community practice for treatment of multiple myeloma. Even Dr. Dalton, testifying for Plaintiff, conceded that medical literature concludes that further studies are necessary before the procedure becomes a standard practice. In addition, both the informed consent form and Dr. Dalton's protocol describe the procedure as an "investigational study." The experimental nature of each of Dr. Dalton's protocols was underscored when he testified that, in his opinion, private insurance carriers should help to underwrite the costs of medical research.

24. The Court finds Defendant's decision to deny coverage of HDCT–ABMT because of its experimental nature was reasonable and based upon available medical evidence. Further, the Court finds HDCT–ABMT is not "medically necessary" within the meaning of the contract.

25. With respect to Plaintiff, who has responded well to the first set of chemotherapeutic treatment, medical experts agree that evidence is inconclusive on whether the procedure would benefit or adversely affect Plaintiff's condition or quality of medical care.

## CONCLUSIONS OF LAW

1. Jurisdiction over this matter is based on diversity of citizenship pursuant to 28 U.S.C. section 1332.

2. The interpretation of the relevant terms of an insurance contract is a question of law for the Court. *Sparks v. Republican National Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982), *cert.*

*denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632.

3. The Court must construe the terms of an insurance policy according to their plain and ordinary meaning. *Id.* Where the language is unclear and can be construed in more than on sense, an ambiguity exists. *Id.,* 132 Ariz. at 534, 674 P.2d at 1133. Such ambiguity will be construed against the insurer. *Id.*

4. To determine whether an ambiguity exists in a policy, the Court must examine the language in question from the viewpoint of one not trained in law or in the insurance business. *Id.* A policy term is not ambiguous merely because parties assign different meanings to it according to their own interests. *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 96, 804 P.2d 822, 825 (App.1990).

5. The policy's definition of "medically necessary" is not ambiguous and the terms contained in the definition are not ambiguous in their ordinary meaning.

6. The ordinary meaning of the word "experimental" is "any action or process undertaken to discover something not yet known." Webster's New World Dictionary, 478 (3d Ed.1988). The ordinary meaning of the word "community" is "a group of people ... having interests, work etc. in common." *Id.* at 282.

7. The Court finds HDCT–ABMT is not medically necessary for Plaintiff where she has only undergone her first set of standard-dose chemotherapy with good response. The HDCT–ABMT is performed to "investigate" the efficacy of the procedure in multiple myeloma patients under approved Phase II protocols and pursuant to an informed consent which describes the procedure as an investigational study. Furthermore, the Court finds insufficient evidence to support Plaintiff's contention that HDCT–ABMT is in accord with accepted community practice. *Schnitker v. Blue Cross/Blue Shield of Nebraska,* 787 F.Supp. 903 (D.Neb.1991) (denying coverage for HDCT–ABMT for multiple myeloma because the procedure remains an unproven treatment whose efficacy is uncertain).

8. The various district court decisions that found insurance coverage for HDCT–ABMT are distinguishable. *Dozsa v. Crum & Forster Ins. Co.*, 716 F.Supp. 131 (D.N.J.1989) found coverage in a preliminary injunctive proceeding for a stage IV multiple myeloma patient where he was resistant to all standard treatments available and only had six months to live. *Pirozzi v. Blue–Cross Blue–Shield of Va.*, 741 F.Supp. 586 (E.D.Va.1990) found coverage under a different policy language and for a stage IV breast cancer patient. In this action, Plaintiff is in stage III multiple myeloma and has not progressed to the more serious stage IV condition. Furthermore, Plaintiff has responded well to her first regimen of standard chemotherapy as evidenced by her remission.

9. Although the burden of proof is one of preponderance of the evidence, the evidence presented during the trial indicates, by clear and convincing evidence, that HDCT–ABMT for multiple myeloma at this time is an experimental procedure at an early stage of research.

10. The Court finds Plaintiff's medical insurance policy does not cover HDCT–ABMT for multiple myeloma at this stage of treatment. The Court recognizes that, in medical research, what is experimental one day may be state-of-the-art treatment the next day. Likewise, what is not medically necessary today may become medically necessary tomorrow. Given the overwhelming indications that each of Dr. Dalton's protocols is experimental, the Court finds that HDCT–ABMT is not "medically necessary" within the meaning of the contract.

■ 11. The Court has the discretion to award attorney's fees. Ariz.Rev.Stat.Ann. § 12–341.01 (1992). Under Arizona law, the following factors apply in a decision to award attorney's fees to a successful party:

1. The merits of the claim or defense presented by the unsuccessful party;
2. Whether the litigation could have been avoided or settled and whether the successful party's efforts were completely superfluous in achieving the result;
3. Whether assessing fees against the unsuccessful party would cause extreme hardship;
4. Whether the successful party prevailed with respect to all the relief sought;
5. The novelty of the legal questions presented;
6. Whether the claim or defense presented had been previously adjudicated in this jurisdiction.

*Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). After considering the appropriate factors, the Court finds an award of attorney's fees is inappropriate in this case.

■ 12. Awarding of costs to the prevailing party, under 28 U.S.C. section 1920, is discretionary. The Court finds under the unique facts of this case, awarding of costs in favor of Defendant would be an extreme financial burden on the Plaintiff. Therefore, Defendant's application for costs is denied.

## CONCLUSION

Plaintiff, Steffenie Lehman, like most individuals afflicted with a life-threatening illness, is a delightful and decent human being. She is surrounded by thoughtful and well-meaning individuals desperately searching for a way to help her medically. Dr. Hill, Ms. Lehman's treating oncologist, and Dr. Dalton, a highly respected researcher, firmly believe that HDCT–ABMT is a "state-of-the-art" treatment which is medically necessary for multiple myeloma patients. Other equally well-respected physicians, Drs. Schilling and Michael, are similarly firm in their opinions that HDCT–ABMT has not yet become an accepted and medically necessary treatment for multiple myeloma patients. The prevailing medical opinions, medical literature, exhibits, and even the testimony of Dr. Dalton reflect the latter to be the case and the Court has so found. It is easy to understand the opinions of Drs. Dalton and Hill as, each day, they must face difficult decisions which affect patients like Ms. Lehman

whose prospects for the future are in doubt.

At the eye of the storm is Plaintiff, Ms. Lehman, a woman of extreme courage facing an illness which currently has no known cure. At trial, Ms. Lehman acknowledged that Dr. Dalton informed her of the experimental nature of HDCT–ABMT, yet she opted to pursue any medical treatment that might extend or improve the quality of her life. Fortunately, Ms. Lehman is in strong remission and has enrolled in one of the experimental protocols at the NIH. In large measure, her acceptance in the NIH protocol was a result of Defendant's efforts. Ms. Lehman's acceptance into the NIH protocol did not shape this Court's decision on the facts and the law. Rather, her acceptance is merely a fortuitous circumstance which will enable Ms. Lehman to participate in an experimental inquiry to help determine whether HDCT–ABMT will further benefit multiple myeloma patients who are in remission.

While Plaintiff did not prevail on the legal issues, the admiration and hope for Ms. Lehman by all involved in this case, including the Court, is heartfelt.

IT IS THEREFORE ORDERED that the Clerk of the Court enter judgment in favor of Defendant.

IT IS FURTHER ORDERED that the attorney's fees and costs to Defendant are denied.

IT IS FURTHER ORDER that Clerk of the Court mail the exhibits to respective counsel.